# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
                 )
               Plaintiff, )
                 )
v. )      Case No. CIV-07-734-D
                 )
BURLINGTON NORTHERN & SANTA FE )
RAILWAY COMPANY, )
                 )
               Defendant. )

## O R D E R

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 32], which is fully briefed and at issue.[1]  Based on the case record, the parties' arguments and the governing law, the Court finds that the Motion should be denied.

### Background

Plaintiff EEOC brings suit on behalf of two individuals, Jimmy Rider and Randy Aultman, who were not hired by Defendant for maintenance-of-way or track-worker positions, allegedly in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Defendant seeks summary judgment in its favor pursuant to Fed. R. Civ. P. 56 on the ground that Plaintiff cannot prove Defendant's articulated reasons for not hiring Rider and Aultman were pretextual and that age was the determining factor in the failure to hire them.  This argument is based on the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-

---

[1] The Motion is supported by Defendant's opening and reply briefs and appendix of exhibits [Doc. Nos. 32, 33 and 49] and opposed by Plaintiff's response and surreply briefs [Doc. Nos. 39, 56], all of which have been reviewed and considered.

04 (1973), and assumes that Plaintiff can establish a *prima facie* case of age discrimination. The sole question presented is whether Plaintiff has sufficient facts and evidence to create a triable issue of pretext.

## Standard of Decision

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); Fed. R. Civ. P. 56(e)(2). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. Although a district court has discretion to go beyond referenced portions of the supporting material, it is not required to do so. *Id.* at 672. The Court's inquiry is whether the facts and evidence identified by

the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts[2]

In the fall of 2005, Defendant made a job posting for maintenance-of-way positions in Oklahoma. Three positions were listed: track laborer; truck driver; and welder. According to deposition testimony, however, all persons hired would begin by being placed in the position of laborer and then be permitted to bid for other positions, including truck driver and welder. The posting of all three positions stated that a Class "A" commercial driver's license was strongly preferred. Defendant made the job posting online; interested applicants were required to complete and submit an online application by the posted closing date. All submitted applications were initially screened for completeness and qualification, and the remaining applicants were invited by email to attend an informational session, take an entry-level test, and receive an interview.

Over 100 individuals attended an initial session on October 13, 2005, at a Holiday Inn in Norman, Oklahoma. Those interested in proceeding with the application process took a written aptitude test, completed a handwritten update of their online application, signed up for an interview, and gave a hair sample (to be used later for a pre-employment drug test if they were selected to receive a job offer). Interviews lasted 15-20 minutes and were conducted by three interviewing panels, each of which consisted of one human resources representative and one operations manager. Each panel asked the same series of questions from a written interview guide, and panels were supposed to assign a numerical score to each candidate using a standard form that contained a grid

---

[2] This statement includes facts presented by Defendant that are supported by the record, as well as additional facts presented by Plaintiff that are supported by the record. Unsupported and immaterial facts are disregarded. All facts are stated in the light most favorable to Plaintiff.

for assessing general qualifications. However, only two of the panels did so; one of the panels did not complete the grids and did not assign scores to all of the candidates it interviewed. Each panel was to indicate at the conclusion of the interviews which applicants should receive an offer of employment, and once the results of the written test were received, the recommended applicants were to receive a conditional offer of employment if they passed the test. The EEOC disputes that these selection procedures were followed and that the panels operated independently of one another, as Defendant contends.

Twenty-nine applicants took the written test and were interviewed. Aultman was interviewed by the panel that did not score all interviewees. The panel did, however, assign him an interview score of 22. Rider received an interview score of 20; the panel members who interviewed him gave conflicting testimony concerning how his score was decided. Neither Aultman nor Rider was recommended for employment. There was conflicting testimony about how recommendation decisions were reached. Nine applicants received conditional offers of employment. Of those nine, two had no interview scores, six had interview scores equal to or lower than Aultman's, and two scored lower than Rider. Eight of the nine were younger than 40; one was a 40-year-old woman with previous experience. During the administrative process, during discovery, and in its summary judgment brief, Defendant has presented evidence that Rider and Aultman were not selected because Defendant deemed the selected applicants to be better qualified for track-worker jobs. The EEOC, on the other hand, presents information designed to show that Rider's and Aultman's qualifications were superior to those of candidates who were selected to receive job offers. Defendant also has presented evidence that Rider's interviewers discounted his application because they distrusted his answer to a question about his previous railroad employment.

Defendant subsequently rescinded the job offers of four candidates based on their medical exams or background checks, and one candidate declined the offer. Thus, only four candidates were successfully hired. Although more workers were needed, no offers to alternates were made, which allegedly was inconsistent with Defendant's procedures regarding alternate candidates.

Rider timely filed an EEOC charge of age discrimination. After investigating the charge, the EEOC found reasonable cause to believe that Defendant had decided not to hire Rider and three other applicants because of their ages. The EEOC brought suit on behalf of Rider and the three others; only Aultman elected to participate in this action.

## Discussion

Under the burden-shifting analysis applicable to age discrimination claims, the EEOC bears the burden – once Defendant has articulated legitimate, nondiscriminatory reasons for its decisions not to hire Rider and Aultman – to prove that Defendant's reasons are pretextual.[3] *See McDonnell*

---

[3] In ADEA cases, the court of appeals has consistently applied the *McDonnell Douglas* burden-shifting analysis applicable under Title VII. *See, e.g., Riggs v. AirTran Airways, Inc.*, 497 F. 3d 1108, 1114-15 (10th Cir. 2007). However, the Supreme Court recently ruled that the ADEA imposes a standard of proof different from Title VII and requires a plaintiff to prove that "age was the 'but-for' cause of the challenged adverse employment action," rather than simply a motivating factor. *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2352 (2009). In *Gross*, the Court did not discuss the effect of its holding on the *McDonnell Douglas* burden-shifting analysis in an ADEA case, but observed in a footnote that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . utilized in Title VII cases is appropriate in the ADEA context." *Gross*, 129 S. Ct. at 2349 n. 2. Research leads the Court to conclude, however, that *Gross* does not preclude the application of the *McDonnell Douglas* analysis in ADEA cases. Although the Tenth Circuit has not decided whether *McDonnell Douglas* still applies in cases involving circumstantial evidence of age discrimination, it has continued to apply *McDonnell Douglas* after *Gross* in unpublished decisions. *See Phillips v. Pepsi Bottling Co.*, No. 08-1003, 2010 WL 1619259 (10th Cir. April 22, 2010); *Reeder v. Wasatch County Sch. Dist.*, No. 08-4048, 2009 WL 5031335, *3 (10th Cir. Dec. 23, 2009); *see also Woods v. Boeing Co.*, No. 07-3358, 2009 WL 4609678, *5 (10th Cir. Dec. 8, 2009) (Anderson, J., concurring) (noting criticism of *McDonnell Douglas* in ADEA cases, acknowledging *Gross*, but concluding that "*McDonnell* still applies in ADEA cases in this circuit"). Other federal appellate courts have also held that *McDonnell Douglas* remains applicable to such claims. *See Geiger v. Tower Automotive*, 579 F. 3d 614, 622 (6th Cir. 2009); *see also Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). Having reviewed these decisions, the Court agrees that, notwithstanding *Gross*, the *McDonnell Douglas* burden-shifting framework remains applicable to ADEA claims.

*Douglas,* 411 U.S. at 802-04; *Young v. Dillon Co.*, 468 F. 3d 1243, 1249 (10th Cir. 2006). The EEOC does not dispute that Defendant has satisfied its burden of production. Defendant has presented evidence to show that its hiring decisions were the result of a standard, multi-faceted selection process and that Rider and Aultman were not recommended for hire after selection panels reviewed their applications and interviewed them. Thus, the burden rests on the EEOC to identify sufficient facts and evidence to establish a triable issue that the proffered reasons for not selecting Rider and Aultman are a pretext for age discrimination.

A plaintiff demonstrates pretext by showing either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Texas Dep't Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Under the latter approach:

> A plaintiff demonstrates pretext by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)). Evidence of pretext may include "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (quoting *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999)).

*Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005). In the context of hiring or promotion decisions, the relative merits of individual employees is a proper consideration only if the disparity in qualifications is "overwhelming" or the plaintiff was "markedly better qualified" because courts may not properly second-guess employers' business judgments. *See id.* at 1309-10, 1311. The court of appeals has further held:

In some instances, evidence that an employer's decision makers harbored a general bias against a protected class may support an inference that the decision makers were influenced by the bias in making a particular employment decision. *See Ortiz v. Norton*, 254 F.3d 889, 896 (10th Cir.2001). . . . For evidence of general bias to be pertinent, we require some connection or logical "nexus" between a showing of general bias and a particular employment decision. [*Timmerman v. U.S. Bank*, 483 F.3d 1106,] at 1117-18 [(10th Cir.2007)]. The general bias must play "a *direct role* in the adverse employment decision in the plaintiff's case." *Id*. at 1118 (emphasis added).

*Turner v. Public Service Co.*, 563 F.3d 1136, 1144 (10th Cir. 2009). When the evidence of bias consists of discriminatory comments of a decision maker, the comments must be somehow tied to the disputed employment action; that is, the plaintiff "must show that the allegedly discriminatory comments were directed at her, her position, or the defendant's policy which resulted in the adverse action . . . ." *Johnson v. Weld County*, 594 F.3d 1202, 1211 (10th Cir. 2010) (internal quotation omitted). Regarding subjectivity in hiring decisions, the court of appeals has stated:

Although "the presence of subjective decision-making can create a strong inference of discrimination," the use of subjective considerations by employers is "not unlawful per se." *Bauer v. Bailar*, 647 F.2d 1037, 1045-1046 (10th Cir. 1981). Rather, "we have consistently recognized that such criteria 'must play some role' in certain management decisions and accordingly have reviewed the use of subjective factors on a case-by-case basis." *Green v. New Mexico*, 420 F.3d 1189, 1195 (10th Cir. 2005) (quoting *Pitre v. W. Elec. Co*., 843 F.2d 1262, 1272 (10th Cir. 1988)). Though "there is certainly a level of subjectivity in *any* interview-based selection process," interviewers do not always "use[ ] their discretion as a means for unlawful discrimination." *Santana v. City and County of Denver*, 488 F.3d 860, 866 (10th Cir. 2007) (emphasis added). We thus "typically infer pretext . . . only when the criteria on which the employers ultimately rely are *entirely subjective* in nature." *Jones* [*v. Barnhart*], 349 F.3d [1260,] at 1267-68 [(10th Cir. 2003)] (emphasis added).

*Turner*, 563 F.3d at 1145.

Statistical evidence may also create an inference of pretext. However, the court of appeals has urged caution concerning the use of such evidence:

We have long required that "[s]tatistical evidence should be closely related to the issues in the case. . . . "[I]n order for statistical evidence to create an inference

7

of discrimination, the statistics must show a significant disparity and eliminate nondiscriminatory explanations for the disparity. In other words, a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between *comparable* individuals." *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1991) (citation omitted) (emphasis in original); *see also Pippin* [*v. Burlington Res. Oil & Gas Co.*], 440 F.3d [1186,] at 1197-98 [(10th Cir. 2006)].

*Turner*, 563 F.3d at 1147.

After careful consideration of the summary judgment record, the Court concludes that the EEOC has come forward with sufficient facts and evidence – when viewed most favorably to the EEOC as required by Rule 56 – to demonstrate a triable issue of pretext. Of course, this conclusion does not relieve the EEOC of the burden to prove at trial, as required by *Gross*, that Defendant would have selected Rider and Aultman for employment "but for" age discrimination. However, the EEOC has made a minimally sufficient showing from which such an inference could reasonably be reached. Therefore, the Court finds that Defendant is not entitled to summary judgment on the EEOC's age discrimination claim asserted on behalf of Rider and Aultman.

## Conclusion

For these reasons, the Court finds that genuine issues of material facts preclude summary judgment on the EEOC's age discrimination claim.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 32] is DENIED.

IT IS SO ORDERED this __15th__ day of July, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE